**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRISTIAN DOE; DIANA DOE,<br><br>　　　　　　Petitioners-Plaintiffs,<br><br>v.<br><br>KEVIN K. McALEENAN, Acting Secretary of the Department of Homeland Security; et al.,<br><br>　　　　　　Respondents-Defendants. | Case No.:  3:19-cv-2119-DMS-AGS<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |

　　　　This matter comes before the Court on Petitioners' motion for temporary restraining order ("TRO") to allow Petitioners access to their retained counsel prior to and during Petitioners' non-*refoulement* interviews under the Government's recently implemented Migrant Protection Protocols Program ("MPP" or "Remain in Mexico"). Under the MPP, asylum seekers like Petitioners who enter or seek admission to the United States by land from Mexico may be returned to Mexico where they must await the outcome of their immigration proceedings. An exception to the MPP exists where an asylum seeker can show he or she faces persecution or torture in Mexico, a showing they attempt to make during their non-*refoulement* interview. If successful, the individual is taken out of MPP and paroled or detained in the United States for the duration of their removal proceedings.

1

Petitioners await their non-*refoulement* interview but allege Respondents are wrongfully denying them their right of access to retained counsel, both prior to and during their interview, in violation of their statutory rights under the Administrative Procedure Act ("APA") and their rights under the First and Fifth Amendments to the United States Constitution. Respondents have agreed not to conduct Petitioners' non-*refoulement* interviews pending the Court's determination of the present motion. Respondents argue the Court should deny the motion as the Court lacks jurisdiction to hear the matter, and in any event, there is no right of access to retained counsel prior to or during a non-*refoulement* interview.

The matter has been fully briefed and argued. For the reasons set forth below, the Court concludes Petitioners have met their burden and are entitled to a TRO allowing them access to their retained counsel before and during their non-*refoulement* interviews. The APA, specifically 5 U.S.C. § 555(b), provides a right of access to retained counsel for such interviews.

## I.
## BACKGROUND

Petitioners' declarations in support of their motion provide the following background facts. Petitioners are the parents of a family of five children that fled their home country of Guatemala after suffering extortion, death threats, and rape. (Mot. for TRO at 14). Like many families, they traveled through Mexico to seek asylum in the United States. (*Id.*) While in Mexico, Petitioners and their children were threatened at gun point, assaulted, robbed, and stripped of their clothing. (*Id.*) Their attackers, masked men seemingly clothed in Mexican government uniforms, threatened to kill Petitioners if they reported the incident. (*Id.*) These threats have left Petitioners and their children terrified. (*Id.*)

Upon entering the United States, Petitioners immediately requested asylum. (*Id.*) Prior to December 2018, asylum seekers like Petitioners were placed in expedited removal ("ER") proceedings. 8 U.S.C. § 1225(b)(1). If they expressed a fear of persecution or

torture upon removal to their country of origin, the asylum seekers were given a credible fear interview ("CFI") to determine whether there was a significant possibility they were eligible for asylum. 8 U.S.C. § 1225(b)(1)(A)(i). If they passed the CFI, they were placed in full removal proceedings before an immigration judge ("IJ") to present their asylum case. 8 U.S.C. §§ 1229a(c)(4), 1225(b)(1)(B)(ii). After December 2018, however, the MPP was instituted and the process changed.

As noted, asylum seekers arriving on land from Mexico are now required under the MPP to remain in Mexico while their immigration proceedings are pending. (Res. to Mot. for TRO, Exs. 1, 4). If an asylum seeker expresses fear of returning to Mexico, then he or she is detained by Customs and Border Protection ("CBP") pending a non-*refoulement* interview with a U.S. Citizenship and Immigration Services ("USCIS") asylum officer to determine whether they are more likely than not to face persecution or torture in Mexico. (Mot. for TRO at 16.) While awaiting a non-*refoulement* interview, an asylum seeker does not have the ability to communicate confidentially with retained counsel. (*Id.* at 17–18.) Furthermore, retained counsel may not be present during non-*refoulement* interviews, which are conducted telephonically and can last up to several hours. (*Id.* at 16, 17–18.) *See* Compl., ¶ 144 (Respondent Department of Homeland Security "has a written policy mandating a blanket denial of access to counsel to individuals subject to MPP who are in its custody while awaiting and during non-*refoulement* interviews.")) If an individual passes the non-*refoulement* interview, they are removed from MPP and either released on parole or detained in the United States, pending removal proceedings. Mot. for TRO at 17. If the individual does not pass, they must await the outcome of their removal proceedings in Mexico. (*Id.*)

In accordance with the MPP, Petitioners were returned to Mexico to await the outcome of their removal proceedings. (*Id.*) While in Tijuana, Petitioners survived a shoot-out that occurred outside their temporary shelter. (*Id.* at 15.) Because of this violence and the trauma Petitioners experienced while traveling through Mexico, Petitioners expressed a fear of returning to Mexico during an immigration proceeding on

November 5, 2019. (*Id.* at 19.) Bound by the duty of non-*refoulement*, the United States placed Petitioners and their children in CBP detention to await their non-*refoulement* interviews. (*Id.*) During their detention, Petitioners have not been allowed to confidentially communicate with their retained counsel. (*Id.*) The same day on which they expressed a fear of returning to Mexico, Petitioners commenced the present action and filed the subject motion.

## II.

## DISCUSSION

Petitioners seek a TRO allowing them access to their retained counsel while in CBP custody and during their non-*refoulement* interviews. Before turning to the merits and other injunctive relief factors, the Court addresses Respondents' various jurisdictional arguments, including that there is no case or controversy under Article III, § 2 of the United States Constitution as the case is moot and that Petitioners are not "in custody" for purposes of habeas review under 28 U.S.C. § 2241.

Under Ninth Circuit law, the completion of activity is not the hallmark of mootness. *See, e.g.*, *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002) (holding plaintiffs' challenge to a timber sale is not moot, despite the completion of the sale). A case is moot "only where no effective relief for the alleged violation can be given." *Id.* (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001)). Here, the relief Respondents offered was both incomplete and inadequate. The day after Petitioners filed their motion for TRO, Respondents offered Petitioners the opportunity to speak with their counsel over the phone for 45 minutes and the telephonic presence of counsel during their non-*refoulement* interview. (Res. to Mot. for TRO at 13; Rep. to Respondents Res. at 3). Petitioners' counsel requested confidential communication with their clients consistent with Petitioners' asserted statutory and constitutional rights to counsel, and Respondents refused. (Res. to Mot. for TRO at 13). Consequently, Petitioners' counsel declined the offer. (*Id.*) Petitioners remain in CBP detention and Respondents' policy prohibiting

access to retained counsel remains in effect. Therefore, effective relief for the alleged violation may still be given and the issue is not moot.

Respondents' argument that Petitioners are not "in custody" for purposes of 28 U.S.C. § 2241 also fails. "Section 2241 requires a petitioner to be "in custody" at the time of filing for the federal courts to have jurisdiction over a habeas petition." *Smith v. U.S. Customs & Border Patrol Prot.*, 741 F.3d 1016, 1019 (9th Cir. 2014). A petitioner is "in custody" if he is subject to conditions that "significantly confine and restrain his freedom." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Petitioners are currently being held in CPB detention facilities. (Mot. for TRO at 18). Their freedom is clearly confined and restrained: they cannot come and go as they please, they have little room to walk, and they allege they are subjected to cold temperatures and lack access to basic necessities, including toothpaste, hygiene products, and changes of clothing. (*Id.* at 18–19.) Respondents argue this kind of detention does not constitute "custody" because it is brief and incidental to Petitioners' removal proceedings.[1] Neither of these reasons, however, confronts whether Petitioners are subject to conditions that significantly confine and restrain their freedom. Given the allegations at issue, Petitioners are "in custody" for purposes of § 2241.[2]

---

[1] Respondents also argue that if Petitioners are returned to Mexico under the MPP, then they will not be considered "in custody." This argument is beside the point. At the time of their filing, Petitioners were in CBP custody, not in Mexico. (Mot. for TRO at 19.)

[2] Respondents have raised other related meritless jurisdictional and procedural arguments, including that Petitioners seek an advisory opinion and allege only speculative injury. As discussed, the alleged deprivation of a statutory and constitutional right to counsel is a redressable injury. Seeking a determination that the right of access to retained counsel exists and has been violated under the circumstances does not invite an advisory opinion. Respondents also argue that Petitioners have no private right of action to sue for anything arising from the non-*refoulement* interview process, as the process was established to satisfy "non self-executing" treaty obligations, citing among other things the Convention Against Torture Act. But Petitioners are not suing under a treaty or related Act. Their claims arise under the APA and the Constitution of the United States. Finally, Respondents argue that judicial review of international non-*refoulement* obligations is prohibited, citing

With these findings, the Court turns to the TRO. The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To meet that showing, Petitioners must demonstrate "'[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).[3] Each factor is met.

///

---

the rule of "non-inquiry" and *Prasoprat v. Benov,* 421 F.3d 1009, 1016 (9th Cir. 2019) (stating courts must refrain from second-guessing executive branch determinations "whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state.") This strawman argument fares no better than Respondents' other arguments. Petitioners are not challenging an executive branch decision to return Petitioners to Mexico. Rather, they are seeking to vindicate rights provided to them under federal law.

[3] The Ninth Circuit applies separate standards for injunctions depending on whether they are prohibitory, *i.e.* they prevent future conduct, or mandatory, *i.e.* "they go beyond 'maintaining the status quo[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). To the extent Petitioners are requesting mandatory relief, that request is "subject to a higher standard than prohibitory injunctions," namely that relief will issue only "when 'extreme or very serious damage will result' that is not capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Id.* at 999 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Under either standard, Petitioners have met their burden for the reasons set out above.

**A. Likelihood of Success**

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). While Petitioners carry the burden of demonstrating likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, Petitioners argue they are likely to succeed on the merits because under the APA "default provision," they have a right of access to counsel of their choice during and before their non-*refoulement* interview. *See* 5 U.S.C. § 555(b) ("A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel . . . ."). Respondents argue that the Immigration and Nationality Act ("INA") supersedes the APA default provision, citing *Marcello v. Bonds*, 349 U.S. 302, 309 (1955), and *Ardestani v. INS*, 502 U.S. 129, 133 (1991), and that under the INA, Petitioners are not permitted access to retained counsel before or during their interview.

There are two flaws in Respondents' argument. First, neither *Marcello* nor *Ardestani* stands for the proposition that the INA supersedes the APA in *all* immigration proceedings. The Supreme Court in *Marcello* held that § 242(b) of the INA, the precursor to the modern removal proceeding statute in 28 U.S.C. § 1229a, supplants the APA as "the sole and exclusive procedure for deportation proceedings." *Marcello*, 349 U.S. at 310. The Court cited the INA's "laborious adaption of the [APA] to the deportation process, the specific points at which deviations from the [APA] were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute . . . " in determining the INA, and not the APA, governed. *Id*. The Court in *Ardestani*, relying on its decision in *Marcello*, held that because plaintiff's deportation proceedings were not subject to the APA, plaintiff could not seek attorney fees under the Equal Access to Justice Act. *Ardestani*, 502 U.S. at 134. Both cases deal specifically with deportation proceedings, not immigration proceedings in general. This

distinction is significant: the INA lays out "a specialized' and "very particularized" procedure for deportation proceedings, indicating congressional intent to displace the APA in the context of deportation proceedings. *Marcello*, 349 U.S. at 308–09. Where the INA is silent, however, there is no evidence of such congressional intent. *See, e.g.*, *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955) (holding that the INA does not supersede the APA's right to judicial review because there is no language in the INA which "expressly supersedes or modifies" § 10 of the APA). In other words, if the INA does not provide the procedure, the APA default provisions necessarily still apply. *See* 5 U.S.C. § 559 ("Subsequent statute may not be held to supersede or modify [the APA's protection of the right of access to retained counsel], except to the extent that it does so expressly.").

The second flaw in Respondents' argument is that even if the INA did supplant the APA here, the INA does not address whether Petitioners have a right of access to counsel prior to and during non-*refoulement* interviews. Respondents note that under the INA, asylum seekers may consult with retained counsel prior to and during a CFI, but not during expedited removal proceedings or primary or secondary inspections. *See* 8 C.F.R. § 208.30(d)(4) (stating that an asylum seeker may consult with a person prior to and during her CFI); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) (finding "no legal basis for [the claim] that non-admitted aliens who have not entered the United States have a right to representation" during expedited removal proceedings). By contrast, there are no provisions addressing whether asylum seekers have access to retained counsel prior to and during a non-*refoulement* interview. (Res. to Mot. for TRO at 21). Respondents argue this lack of mention necessarily means that asylum seekers do not have such a right. The Court, however, disagrees. Where the INA is silent, the APA default provisions necessarily apply; to hold otherwise would be to render the default provisions obsolete. *See* 5 U.S.C. § 559 (stating subsequent statute may not supersede or modify the APA unless "it does so expressly.").

Access to retained counsel for a non-*refoulement* interview, which is undisputedly not a part of formal removal proceedings, is not addressed in the INA. The INA, therefore,

has not expressly superseded the APA's default provision concerning access to retained counsel. Consequently, § 555(b) of the APA applies.[4] For these reasons, the Court finds there is a likelihood of success on Petitioners' statutory claim under the APA, 5 U.S.C. § 555(b).[5]

**B. Irreparable Injury and Balance of Equities**

Turning to the next three factors, Petitioners must show they are "'likely to suffer irreparable harm in the absence of preliminary relief[,]'" and demonstrate that "'the balance of equities tips in [their] favor.'" *Hernandez*, 872 F.3d at 995 (quoting *Winter*, 555 U.S. at 20). Petitioners have met their burden.

Petitioners allege that without access to counsel, they risk the irreparable harm of a non-reviewable erroneous decision that forces them to return to Mexico to face persecution. Petitioners emphasize the complexity of non-*refoulement* interviews that they—as unsophisticated migrants in stressful and foreign circumstances—do not understand; and

---

[4] The issue of whether access to retained counsel includes confidential, in-person communication, as opposed to telephonic communication, has not been briefed in this case. The parties should be prepared to address this issue in their preliminary injunction briefing. For the purposes of these Petitioners, however, the Court orders confidential, in-person access to retained counsel prior to Petitioners' non-*refoulement* interviews. *See* 5 U.S.C. § 555(b) ("A person compelled to appear in person before an agency or representative thereof is entitled to be *accompanied*, represented, and advised by counsel . . . .") (emphasis added); *Black's Law Dictionary* (11th ed. 2019) (defining accompany as "to go along with (another)" or "to attend"; *United States v. McPhaul*, 617 F. Supp. 58, 59 (W.D.N.C. 1985) ("Under 5 U.S.C. § 555(b), there is a right to have counsel present whenever a person is compelled to appear."). Petitioners seem to concede confidential, in-person access to counsel is not required during the non-*refoulement* interview because "attorney participation in that interview does not require confidentiality and the interview itself is telephonic, placing counsel on equal footing with the adjudicators." (Rep. to Respondents Res. at 3 n.2).

[5] In light of Petitioners' likelihood of success on their first claim for relief under the APA, 5 U.S.C. § 555(b) (right of access to retained counsel), the Court declines to address the balance of Petitioners' statutory and constitutional claims under the APA and First and Fifth Amendments to the United States Constitution. (*See* Class Action Complaint and Petition for Writ of Habeas Corpus, Second through Fifth Claims for Relief, ECF No. 1.)

that without access to their counsel, their ability to answer questions and meaningfully participate in the interview is significantly impaired. Given the high stakes of the interview, the Court finds Petitioners have shown likelihood of irreparable harm.

The same reasoning suggests the balance of hardships tips in Petitioners favor. In Respondents' opposition, they raise the specter of national security, but fail to show how allowing access to counsel threatens security. At oral argument, Respondents' counsel referenced logistical difficulties in allowing access to counsel, but provided no evidence in support. On the other hand, Petitioners face potential persecution and harm should they be returned to Mexico. The balance of these factors tips decidedly in favor of Petitioners.

**C. Public Interest**

The final factor for consideration is the public interest. *See Hernandez*, 872 F.3d at 996. To obtain the requested relief, "[p]laintiffs must demonstrate that the public interest favors granting the injunction 'in light of [its] likely consequences,' i.e., 'consequences [that are not] too remote, insubstantial, or speculative and [are] supported by evidence.'" *Id.* (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)).

Here, the public interest is served by allowing Petitioners' access to retained counsel prior to and during their non-*refoulement* interviews. It would not be "'in the public's interest to allow the [government] . . . to violate the requirements of federal law, especially when there are not adequate remedies available.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Given the procedural protections provided by the APA and the lack of appealability of the non-*refoulement* interview, the public's interest weighs in favor of granting Petitioners motion.

## III.
## CONCLUSION

For these reasons, Petitioners' motion for temporary restraining order is granted. Respondents may not conduct Petitioners' non-*refoulement* interviews without first affording them access to their retained counsel both before and during any such interview.

1    Pending before the Court are Petitioners' motions for class certification and
2 preliminary injunction. Respondents shall respond to the motions by **November 27, 2019**
3 **at 5:00 p.m.**, and Petitioners shall file their replies by **December 6, 2019 at 5 p.m.** The
4 parties are ordered to meet and confer in person by no later than **December 4, 2019** to
5 attempt resolution of these matters. Absent resolution, the motions will be heard on
6 **December 13, 2019 at 1:30 p.m.**

8    **IT IS SO ORDERED.**

10 Dated: November 12, 2019

_____
Hon. Dana M. Sabraw
United States District Judge