UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIAN DOE, DIANA DOE,<br><br>                     Petitioners-Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security; et al.,<br><br>                     Respondents-Defendants. | Case No.: 19-cv-2119-DMS (AGS)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

      Pending before the Court is Petitioners' motion for class certification. Petitioners, on behalf of themselves and putative class members, allege Respondents have a practice or policy of prohibiting asylum seekers access to retained counsel prior to and during non-*refoulement* interviews. Petitioners seek to certify a class of similarly situated individuals for whom injunctive relief can be entered allowing for such access to retained counsel.

      On November 12, 2019, the Court granted Petitioners' motion for temporary restraining order ("TRO") and ordered Respondents to allow Petitioners access to their retained counsel prior to and during their non-*refoulement* interviews. *Doe v. McAleenan*, --- F. Supp. 3d ---, 2019 WL 6605880, at *5 (S.D. Cal. Nov. 12, 2019). Since the issuance of that Order, the parties have fully briefed the issue of class certification, and the Court

has heard the arguments of counsel. For the reasons set forth below, the Court grants Petitioners' motion for class certification.

# I.

# DISCUSSION[1]

Petitioners Cristian and Diana Doe and their five children fled their home country of Guatemala in April of 2019. (Mot. for TRO at 14). While traveling through Mexico, Petitioners and their children were threatened at gun point, assaulted, robbed, and stripped of their clothing. (*Id.*). Upon reaching the United States, Petitioners immediately requested asylum. (*Id.*).

Pursuant to the Migrant Protection Protocols Program ("MPP" or "Remain in Mexico"), a program instituted in January of 2019, Respondents returned Petitioners to Mexico to await their immigration proceedings. (*Id.*). While in Tijuana, the family survived a shoot-out that occurred outside their temporary shelter. (*Id.* at 15). Because of this violence and the trauma Petitioners experienced while traveling through Mexico, Petitioners expressed a fear of returning to Mexico during an immigration court proceeding. (*Id.* at 19). Petitioners were given a non-*refoulement* interview—which assesses whether there is a likelihood the asylum seeker will face persecution or torture upon return to Mexico—by a United States Citizenship and Immigration Services ("USCIS") Asylum Officer. (Resp. in Opp'n to Prelim. Inj., Declaration of Ashley Caudill-Mirillo ("Caudill-Mirillo Decl."), at ¶ 5). Petitioners did not pass the non-*refoulement* interview. (*Id.*). Petitioners expressed a fear of returning to Mexico again at a later immigration court hearing. (*Id.*). Pursuant to Respondents' policy, Petitioners were denied

---

[1] The factual background set out herein is abbreviated. A full discussion of the facts relevant to this lawsuit is set out in the Order granting Petitioners' motion for a classwide preliminary injunction filed concurrently herewith and Order granting Petitioners' motion for TRO. *Doe*, 2019 WL 6605880, at *1–2.

access to their retained counsel prior to and during their non-*refoulement* interview. (Mot. for Class Certification at 14).

Petitioners filed suit against Respondents, alleging their policy violated the Administrative Procedures Act ("APA"), the Immigration and Nationality Act ("INA"), and the First and Fifth Amendments to the United States Constitution. (Class Action Compl. and Petition for Writ of Habeas Corpus, ECF No. 1). Petitioners also filed motions for TRO and class certification. The Court granted Petitioners' motion for TRO, enjoining Respondents from prohibiting Petitioners access to retained counsel prior to and during their non-*refoulement* interview. *Doe*, 2019 WL 6605880, at *1. With counsel present, Petitioners ultimately passed their second non-*refoulement* interview. (Caudill-Mirillo Decl. ¶ 5). Petitioners are still awaiting the outcome of their asylum case but are no longer within the MPP. (Rep. in Supp. of Prelim. Inj., Declaration of Stephanie Blumberg ("Blumberg Decl."), at ¶ 9).

Petitioners, on behalf of themselves and putative class members, request certification of the following class:

> All individuals who are detained in CBP custody in California awaiting or undergoing non-*refoulement* interviews pursuant to what the government calls the "Migrant Protection Protocols" program and who have retained lawyers.

(Mot. for Class Certification at 2). Petitioners argue this proposed class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Defendants argue these requirements are not met, Petitioners lack standing, and the class certification motion is moot. (Resp. in Opp'n to Class Certification at 6). The only claim currently at issue and subject to class certification is Petitioners' APA claim.[2] Petitioners' pending motion for classwide preliminary injunction is addressed in a separate order.

---

[2] As noted in the Order granting Petitioners' motion for classwide preliminary injunction, the Court declines to address the balance of Petitioners' statutory and constitutional claims

## A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir. 1977). "The Rule 'does not set forth a mere pleading standard.' " *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350). "Rather, a party must not only 'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)[.]" *Id.* (quoting *Dukes*, 564 U.S. at 350) (internal citation omitted).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification—numerosity, commonality, typicality, and adequacy of representation. A showing that these requirements are met, however, does not warrant class certification. The plaintiff also must show that one of the requirements of Rule 23(b) is met.

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because the relief requested in a Rule 23(b)(2) class is prophylactic, inures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class are not required. *See Dukes*, 564 U.S. at 361–62 (noting relief sought in a Rule

---

under the INA and the First and Fifth Amendments to the United States Constitution in light of Petitioners' likelihood of success on their APA claim.

23(b)(2) class "perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity to opt out).

The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558 (1963)). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits at the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 680 (11th Cir. 1983) (plaintiff's burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, a court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee's notes. If a court is not fully satisfied that the requirements of Rule 23(a) and (b) have been met, certification should be refused. *Falcon*, 457 U.S. at 161.

Before turning to the requirements of Rule 23(a), the Court addresses Respondents' arguments that Petitioners lack standing, and that Petitioners' claim is moot.

**B. Article III Standing**

Standing is decided as of the "outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Thus, in determining whether Petitioners have standing, the Court "must look at the facts as they exist at the time the complaint was filed." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033,1047 (9th Cir. 2014) (internal quotation omitted). In a class action, like here, standing is satisfied "if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.

2001)). Standing requires Petitioners to show (1) they have suffered injury-in-fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) a causal connection between the injury and the conduct complained of, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Respondents contend Petitioners lack standing because Petitioners are no longer at risk of being returned to Mexico under the MPP. (Resp. in Opp'n to Class Certification at 12–13). Petitioners argue Respondents' argument confuses two separate doctrines: standing and mootness. (Rep. in Supp. of Class Certification at 3).

The doctrine of standing addresses whether the party invoking federal court jurisdiction has "[t]he requisite personal interest" in the outcome of the case "at the commencement of the litigation." *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994) (internal quotations omitted). The doctrine of mootness addresses whether the party's personal interests "continue[s] throughout [the litigation's] existence." *Id.* (internal quotations omitted). In other words, "mootness [is] 'the doctrine of standing set in a time frame.' " *Id.* at 1518–19 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

As applied here, standing asks whether Petitioners had a personal stake in the outcome of the litigation at the time they filed their Complaint. Clearly, Petitioners have standing: Petitioners suffered the injury of being deprived access to retained counsel prior to and during their non-*refoulement* interview, the injury was caused by Respondents' policy prohibiting access to counsel, and the injury can be redressed by an injunction enjoining Respondents from implementing their policy. *See Lujan*, 504 U.S. at 561. The fact that Petitioners are no longer in the MPP does not change this analysis.

Petitioners need not demonstrate a "real or immediate threat that [Respondents] will again subject [them] to [the MPP]." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983)). Cases like *B.C.* and *Lyons* are not applicable to Petitioners' case, for those cases concern

plaintiffs who were not being subjected to the challenged policies at the time they filed their complaint. In *B.C.*, the plaintiff was a student challenging the school's practice of using dogs to sniff for drugs on the school campus. *Id.* at 1263. The plaintiff sought injunctive relief, and the court dismissed his claim for lack of standing, noting he could not "demonstrate a real or immediate threat that defendants will again subject him to an illegal dog sniff of his person." *Id.* at 1264. Similarly, in *Lyons*, the plaintiff sought injunctive relief to enjoin Los Angeles police from illegally using chokeholds, and the Supreme Court held the plaintiff lacked standing because he could not show he was "likely to suffer future injury from the use of the chokeholds by police officers." *Lyons*, 461 U.S. at 97–98, 105.

Unlike the plaintiffs in *B.C.* and *Lyons*, Petitioners sought injunctive relief while being subjected to the practice they were challenging. Petitioners were not challenging "[p]ast exposure to illegal conduct." (Resp. in Opp'n to Class Certification at 13). Petitioners' injury—deprivation of the right to retained counsel—was concrete, actual, and continuing at the time they filed their Complaint and moved for TRO. It was neither speculative nor hypothetical. Petitioners, therefore, do not need to show a real or immediate threat that they will again be subjected to the MPP and deprived of access to retained counsel. Holding otherwise would drastically change the doctrine of standing.

**C. Mootness**

The doctrine of mootness, as explained above, requires that "an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)). "Whether 'the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires.' " *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In a class action, however, the class claim "is not automatically moot because the named representative's claim is moot." *Kuahulu v. Empl'rs Ins. of Wausau*, 557 F.3d 1334, 1336

1  (9th Cir. 1977) (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 754 (1976)).  "If the
2  district court certifies a class before the plaintiff's claim becomes moot, 'mooting the
3  putative class representative's claim will not moot the class action.' " *Slayman*, 765 F.3d
4  at 1048 (quoting *Pitts*, 653 F.3d at 1090).

5  There is an exception to this rule for claims that "are so inherently transitory that the
6  trial court will not have even enough time to rule on a motion for class certification before
7  the proposed representative's individual interest expires." *Pitts*, 653 at F.3d at 1090.
8  Inherently transitory claims "will certainly repeat as to the class, either because 'the
9  individual could nonetheless suffer repeated [harm]' or because 'it is certain that other
10 persons similarly situated' will have the same complaint." *Id.* (quoting *Gerstein v. Pugh*,
11 520 U.S. 103, 110 n.11 (1975)).  "Such claims are 'capable of repetition, yet evading
12 review,' and thus do not become moot." *Slayman*, 653 F.3d at 1048 (quoting *Pitts*, 653
13 F.3d at 1090).  In these cases, the district court may apply the 'relation back' approach and
14 certify the class even after the named plaintiff's claim becomes moot. *Pitts*, 653 F.3d at
15 1090; *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991) (holding that
16 even though "the class was not certified until after the named plaintiffs' claims had become
17 moot," the district court still had jurisdiction because the class claim was inherently
18 transitory); *Sosna v. Iowa*, 419 U.S. 393, 401 (1975) (holding that the controversy "remains
19 very much alive for the class of persons [the named plaintiff] has been certified to
20 represent" even if it was "no longer alive as to" the named plaintiff); *Wade v. Kirkland*,
21 118 F.3d 667, 670 (9th Cir. 1997) (noting that if the named plaintiff's claim is inherently
22 transitory, then "the action qualifies for an exception to mootness *even if* there is no
23 indication that [the named plaintiff] or other current class members may again be subject
24 to the acts that gave rise to the claims") (emphasis in original).

25 Petitioners contend their claim is inherently transitory because they were short-term
26 detainees whose claim expired quickly.  (Rep. in Supp. of Class Certification at 4).
27 Respondents argue Petitioners' claim does not qualify as inherently transitory because (1)
28 that exception is limited to cases in which there is a reasonable expectation that the plaintiff

will be subjected to the same action again, (2) the Court had enough time to rule on Petitioners' motion for TRO, (3) Respondents do not have a litigation strategy in mooting class members' claims, and (4) Petitioners are not members of the class they are seeking to certify. (Resp. in Opp'n to Class Certification at 14–16). These arguments are addressed in turn.

First, Respondents argue the inherently transitory exception applies only if the plaintiff will "be subjected to same action again." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (holding that the *individual* plaintiff's claim was not inherently transitory because there was "no indication [he would] again be subject to the challenged prison policies") (emphasis added). Respondents are incorrect. In cases concerning class actions, the named plaintiff need not be subjected to the same action again for the claim to be inherently transitory. *See Geraghty*, 445 U.S. at 399 (noting that in *Gerstein*, there was "no indication that the particular named plaintiffs might again be subject to pretrial detention[,]" yet the Court held the case "not to be moot" because the claim was inherently transitory); *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 927–28 (C.D. Cal. 2011) (noting the requirements of the inherently transitory exception for class claims include: "(1) where the claim is 'capable of repetition yet evading review'; and (2) where the claim is so 'inherently transitory' that the trial court will not have enough time to rule on a motion for class certification before the proposed named plaintiff's individual interest expires"). The Court finds no controlling case law requiring it to first conclude Petitioners may be subjected to the MPP and deprived of access to retained counsel again before it finds Petitioners' claim to be inherently transitory.

Next, Respondents contend the fact the Court ruled on Petitioners' motion for TRO undercuts Petitioners' argument that their claim evades judicial review. Respondents misconstrue the nature of inherently transitory claims. "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S.

66, 76 (2013). Requiring an inherently transitory claim to expire before a court rules on a TRO is too high of a standard and runs counter to long-standing case law. *See McLaughlin*, 500 U.S. at 52 ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."); *Geraghty*, 445 U.S. at 399 (same); *Pitts*, 653 F.3d at 1090 (same); *Gomez*, 805 F. Supp. at 927–28 (same).

Similarly, Respondents' third argument—it is not their litigation strategy to moot putative class members' claims—also misapprehends the inherently transitory exception to mootness. The defense does not need to have a litigation strategy of mooting class members' claims for the inherently transitory exception to apply. Although the inherently transitory exception *may* apply when the defense is picking off class members, it by no means is *restricted* to such fact patterns. *See Pitts*, 653 F.3d at 1091 ("Where, as here, a defendant seeks to "buy off" the small individual claims of the named plaintiffs, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims.").

Finally, Respondents argue that because Petitioners are no longer subjected to the MPP and deprived of counsel, they are not class members and the class action cannot proceed. As explained above, the inherently transitory doctrine is an *exception* to the mootness doctrine—it only applies when a named plaintiff's claim expires before a class is certified. *See Pitts*, 653 F.3d at 1090. If Respondents' argument was correct, then there would be no set of a facts in which the exception could apply.

Contrary to Respondents' arguments, Petitioners' claim is inherently transitory. Upon expressing a fear of returning to Mexico, Petitioners were placed in short-term detention. (Mot. for TRO at 18). They sought an emergency TRO because they feared their non-*refoulement* interview was "imminent." (*Id.* at 11, 12). Petitioners' fear was correct—their non-*refoulement* interview was scheduled two days after the Court ruled on the TRO. (Caudill-Mirillo Decl. at ¶ 5). It is clear the Court would not have had "enough

10

19-cv-2119-DMS (AGS)

time to rule on a motion for class certification before [Petitioners'] individual interest[s] expire[d]." *McLaughlin*, 500 U.S. at 52.

### D. Federal Rule of Civil Procedure 23(a)

Rule 23(a) and its prerequisites for class certification—numerosity, commonality, typicality, and adequacy of representation—are addressed in turn.

#### 1. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Petitioners need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

Petitioners assert that, from January to September of 2019, at least 380 individuals, represented by retained counsel, were within the MPP and had cases before the San Diego Immigration Court. (Mot. for Class Certification, Declaration of Monica Langarica ("Langarica Decl."), at ¶ 8). Of these 380 individuals, it is unknown how many had non-*refoulement* interviews and were deprived of access to their retained counsel. Petitioners do, however, provide declarations of attorneys who were unable to communicate with their clients prior to and during the clients' non-*refoulement* interviews. (*Id.*, Declaration of Leah L. Chavarria ("Chavarria Decl."), at ¶¶ 13, 15–18; Declaration of Vanessa Dojaquez-Torres ("Dojaquez-Torres Decl."), at ¶ 26; Declaration of Margaret Cargioli ("Cargioli Decl."), at ¶ 4; Declaration of Siobhan M. Waldron ("Waldron Decl."), at ¶¶ 8–10; Declaration of Lisa Knox ("Knox Declaration"), at ¶¶ 4, 9). From this information, counsel for Petitioners approximated the class size at 46 people. (Rep. Tr. (Draft) at 47, Dec. 20, 2019). Therefore, Petitioners provide an adequate approximation that class members are sufficiently numerous and demonstrate joinder of all members would be significantly difficult and impracticable. Fed. R. Civ. P. 23(a)(1); *see also Rivera v. Holder*, 307 F.R.D. 539, 550 (W.D. Wash. 2015) (holding a class of 40 aliens was sufficiently numerous,

"especially given the transient nature of the class and the inclusion of future class members"); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (internal quotations omitted); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). Accordingly, Petitioners satisfy the numerosity requirement.

### 2. Commonality

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This element has " 'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.' " *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "However, it is insufficient to merely allege any common question[.]" *Id.* Instead, Petitioners must allege the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Dukes*, 564 U.S. at 350. As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers.

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Petitioners argue commonality is satisfied because "they challenge a single [p]olicy applied equally to all individuals in the non-*refoulement* process in California." (Mot. for Class Certification at 20). The Court agrees. First, the class is asserting the same legal claim, namely whether Respondents' practice of prohibiting putative class members access to retained counsel prior to and during non-*refoulement* interviews violates the APA.

Second, the facts underlying the putative class members' claims are the same: each individual class member came to the United States to seek asylum, was placed in the MPP, expressed a fear of returning to Mexico, retained an attorney, and was refused access to that attorney prior to and during his or her non-*refoulement* interview. (*Id.*). Third, putative class members suffered the same legal injury: they were deprived of access to their retained counsel. Fourth, class members are challenging the same Government policy of refusing asylum seekers access to retained counsel prior to and during non-*refoulement* interviews. Finally, class members are seeking the same relief: a declaration that Respondents' conduct is unlawful and an injunction requiring Respondents to allow asylum seekers access to their retained counsel prior to and during non-*refoulement* interviews. Given the number of common questions of law and fact, Petitioners satisfy the commonality requirement. *See Ms. L. v. U.S. Immigration & Customs Enf't*, 3331 F.R.D. 529, 538 (S.D. Cal. 2018) ("[C]ommonality only requires a single significant question of law or fact[,] . . . and that is particularly so where a suit challenges a system-wide practice or policy that affects all of the putative class members.") (internal quotations omitted).

Respondents contend Petitioners' class flunks the commonality requirement because the class includes individuals detained "as part of the primary or secondary inspection."[3] As the Court noted in the Order granting preliminary injunction, Respondents provide no evidence that a non-*refoulement* interview has ever occurred during primary or secondary inspection. (Order Granting Prelim. Inj. at 12). In comparison to primary and secondary inspection, non-*refoulement* interviews are conducted in separate areas, at different times, by officers of a different agency. (Resp. in Opp'n to TRO, Ex. 4 at 15 ("[T]he USCIS officer should conduct the MPP Assessment interview in a non-adversarial manner,

---

[3] As noted above, the Court declines to address the balance of Petitioners' statutory and constitutional claims under the INA and the First and Fifth Amendments to the United States Constitution. The Court, therefore, will not address Respondents' arguments pertaining to those claims.

separate and apart from the general public."); Mot. for TRO, Declaration of Cristian Doe ("Cristian Doe Decl."), at ¶ 17 ("After the court hearing we were returned to the [POE] before being transferred to another nearby cold holding cell. We were there for two or three days . . . .")). Furthermore, according to the *MPP Guiding Principles*:

> If an alien who is potentially amenable to MPP affirmatively states that he or she has a fear of persecution or torture in Mexico, or a fear of return to Mexico, whether *before or after they are processed for MPP or other disposition*, that alien will be referred to a USCIS asylum officer for screening . . . .

(Resp. in Opp'n to TRO, Ex. 5 at 18–19 (emphasis added)). Regardless of when they express a fear of returning to Mexico, asylum seekers are "referred to a USCISM asylum officer for screening." (*Id.* at 19 ("Aliens who return to the POE for their scheduled hearing and affirmatively state a fear of return to Mexico will be referred to USCIS for screening prior to any return to Mexico.")). Given this information, it is clear that the time in which an asylum seeker expresses a fear of returning to Mexico does not affect the procedure of non-*refoulement* interviews.

    3. Typicality

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). The typicality requirement will occasionally merge with the commonality requirement, *Parsons v. Ryan*, 754 F.3d 657, 687 (9th Cir. 2014), because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether

the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

Petitioners primarily rely on the arguments raised on commonality to support a showing of typicality, while also emphasizing that the putative class representatives, Cristian and Diana Doe, fit the pattern of the putative class members' experiences. (Mot. for Class Certification at 23). Respondents argue typicality is not satisfied because (1) Petitioners' claim is not typical of the class because the proposed class includes asylum seekers who were not paroled into the United States for an immigration court hearing, as well as asylum seekers who articulate a fear of returning to Mexico "later in the removal proceeding process," and (2) Petitioners' claim is moot.

First, Respondents' argument that the putative class includes both individuals who have not attended an immigration court hearing and individuals who articulate a fear of returning to Mexico later in removal proceedings distorts the non-*refoulement* interview process. As the Court addressed in reference to the commonality requirement, when and where an asylum seeker expresses a fear of returning to Mexico does not change the non-*refoulement* procedure—the asylum seeker is always "referred to a USCIS asylum officer for screening" upon an expression of fear of returning to Mexico. (Resp. in Opp'n to TRO, Ex. 5 at 18–19). The issue of whether some class members have been "paroled into the United States" for an immigration court hearing and some have not is a distinction without a discernable or material difference in the context of typicality. (Resp. in Opp'n to Class Certification at 21 (quoting Mot. for TRO at 23)). All putative class members' claims—that the Respondents' policy of prohibiting access to retained counsel prior to and during non-*refoulement* interviews violates the APA—are the same.

Second, Respondents argue Petitioners do not satisfy typicality because Petitioners' claim is moot. Given that Petitioners' claim is inherently transitory, Respondents' argument is misplaced. In determining whether Petitioners' claim is typical of a putative class member's claim, the Court invokes the relation back doctrine and asks whether

15

typicality was satisfied as of the filing of the complaint. *See Pitts*, 653 F.3d at 1092 (holding that certification of inherently transitory claims "relates back to the filing of the complaint"); *see also Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*, 325 F.R.D. 671, 696 (W.D. Wash. 2016) (considering whether typicality was met "as of the filing of the complaint" for an inherently transitory class claim); *Rivera*, 307 F.R.D. at 550 (W.D. Wash. 2015) (holding typicality was "easily satisfied" in a class action with an inherently transitory claim); *Lyon v. U.S. Immigration & Customs Enf't*, 300 F.R.D. 628, 640 (N.D. Cal. 2014) (same). As stated above, Petitioners' claim was typical of the class as of the filing of the Complaint.

### 4. <u>Adequacy of Representation</u>

The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

Petitioners satisfy Rule 23(a)(4)'s adequacy requirement. Petitioners have shown they do not have any conflicts of interest with other class members. Petitioners' Complaint seeks the same relief as the class: an injunction requiring Respondents to allow individuals access to retained counsel prior to and during non-*refoulement* interviews and corresponding declaratory relief. Petitioners have also demonstrated they will protect the interests of the class. Furthermore, there is no conflict between Petitioners' counsel and

the members of the proposed class, and counsel has demonstrated they will prosecute the case vigorously on behalf of the class.

Respondents argue Petitioners cannot demonstrate adequacy because Petitioners "would derive no benefit from any injunctive relief . . . awarded." (Resp. in Opp'n to Class Certification at 22). This argument, like Respondents' argument concerning typicality, does not address the inherently transitory nature of Petitioners' claim. The Court again invokes the relation back doctrine and asks whether adequacy was satisfied at the filing of the complaint. *See Padilla v. U.S. Immigration & Customs Enf't*, No. 18-928, 2019 WL 1056466, at *4 (W.D. Wash. March 6, 2019) (holding the class representatives would adequately represent the class, despite their claim being moot, because their claim was inherently transitory); *McLaughlin v. Wells Fargo Bank, NA*, No. 15-02904, 2016 WL 3418337, at *6 (N.D. Cal. June 22, 2016) (same); *Lyon*, 300 F.R.D. at 636–39 (same); *Franco-Gonzales v. Napolitano*, No. 10-02211, 2011 WL 11705815, at *14 (C.D. Cal. Nov. 21, 2011) (same). As stated, Petitioners are adequate class representatives. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

### E. Federal Rule of Civil Procedure 23(b)

Having satisfied the requirements of Rule 23(a), the next issue is whether Petitioners have shown that at least one of the requirements of Rule 23(b) is met. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614–15 (1997). Petitioners assert they have met the prerequisites of certification for a class under Rule 23(b)(2).

Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2). The Supreme Court has noted:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." [citation omitted]. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not

authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360.

Petitioners argue this case satisfies the requirements of Rule 23(b)(2) because Respondents are subjecting "all class members to the [p]olicy by denying them access to counsel while they are awaiting their non-*refoulement* interviews, and then denying them the participation and representation of their counsel during the interviews themselves." (Mot. for Class Certification at 26). Respondents contend Petitioners cannot satisfy Rule 23(b)(2) "[b]ecause of the class members' various differences, which affect the viability of the legal claims Petitioners purport to bring." (Resp. in Opp'n of Class Certification at 25). Respondents further argue that 8 U.S.C. § 1252(f)(1) precludes the Court from granting classwide injunctive relief. (*Id.*).

Contrary to Respondents' argument, Petitioners have demonstrated that certification under Rule 23(b)(2) is appropriate here. Rule 23(b)(2)'s "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). That is surely the case here: putative class members seek the same injunctive and declaratory relief, and Respondents' policy of prohibiting access to retained counsel prior to and during non-*refoulement* interviews is generally applicable to the entire class. In other words, Petitioners and putative class members seek "relief from a single practice." *Rodriguez*, 591 F.3d at 1126. Accordingly, the Court finds Petitioners' case is particularly suited for certification under Rule 23(b)(2).

Section 1252(f)(1) does not bar classwide injunctive relief in this case. In pertinent part, § 1252(f)(1) states: "no court . . . shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter," referring to §§ 1221–1232. 8 U.S.C. § 1252(f)(1). Respondents contend the relief Petitioners are seeking "imposes additional requirements on the Government before it exercises its authority in 8

U.S.C. § 1225(b)(2)(C)[,]" and "[t]hus, Petitioners are asking . . . to enjoin 8 U.S.C. § 1225(b)(2)(C) on a classwide basis." (Resp. in Opp'n to Class Certification at 25). Respondents' argument is not persuasive. Section 1225(b)(2)(C) states: "the Attorney General may return the alien to [a foreign territory contiguous to the United States] pending a proceeding under section 1229a . . . ." 8 U.S.C. § 1225(b)(2)(C). The relief Petitioners seek does not enjoin § 1225(b)(2)(C). Petitioners are not challenging the legality or the implementation of the MPP or any decision to return an asylum seeker to Mexico. Furthermore, § 1225(b)(2)(C) is silent as to non-*refoulement* interviews, and the relief Petitioners seek relates only to non-*refoulement* interviews. (*See* Order granting Prelim. Inj. at 7–10). Therefore, § 1252(f)(1) does not apply to Petitioners' request for classwide relief.

## II.

## CONCLUSION AND ORDER

For these reasons, Petitioners' motion for class certification is granted as to Petitioners' APA statutory claim. Specifically, the Court certifies the following class under Federal Rule of Civil Procedure 23(b)(2):

> All individuals who are detained in CBP custody in California awaiting or undergoing non-*refoulement* interviews pursuant to the "Migrant Protection Protocols" program and who have retained lawyers.

Petitioners are appointed as Class Representatives, and Counsel from the ACLU Foundation of San Diego and Imperial Counties are appointed as counsel for this Class pursuant to Federal Rule of Civil Procedure 23(g).

**IT IS SO ORDERED.**

Dated: January 14, 2020

_____
Hon. Dana M. Sabraw
United States District Judge